CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 1 2 2005

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

| | |
|---|---|
| SHARON K. MYERS,<br>Plaintiff, | )<br>)<br>) |
| v. | ) Civil Action No. 7:05CV066<br>) |
| JO ANNE B. BARNHART,<br>COMMISSIONER OF SOCIAL SECURITY,<br>Defendant. | )<br>) By: Hon. Michael F. Urbanski<br>) United States Magistrate Judge |

## MEMORANDUM OPINION

Plaintiff Sharon K. Myers ("Myers") brought this action pursuant to 42 U.S.C. § 405(g) for review of the decision of the Commissioner of Social Security denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. The parties have consented to the undersigned Magistrate Judge's jurisdiction over this matter, and the case is now before the court on defendant's motion for summary judgment. Having reviewed the record and after briefing and oral argument, the case is now ripe for decision.

Plaintiff claims disability based on back pain, deteriorating discs, torn muscles, nerves and depression. Plaintiff disputes the administrative law judge's ("ALJ") finding that she retains the residual functional capacity ("RFC") for a significant range of sedentary and light work. After the ALJ's decision, plaintiff's treating physician William Bostic, M.D., completed a residual functional capacity evaluation that contradicted the ALJ's finding, limiting plaintiff to two hours of walking, sitting and standing during a workday. Plaintiff alleges that the Appeals Council failed to appropriately consider this evaluation. As Dr. Bostic's evaluation constitutes new and material evidence under Wilkins v. Secretary, Department of Health and Human

Services, 953 F.2d 93 (4th Cir. 1991), this case will be remanded to the Commissioner for consideration of this RFC evaluation.

## STANDARD OF REVIEW

The court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the conditions for entitlement established by and pursuant to the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

## FACTUAL AND ADMINISTRATIVE HISTORY

Plaintiff was born on July 5, 1958 and has a tenth grade education. (R. 18, 28, 330) Plaintiff's previous work includes that of a store clerk, cashier and assistant manager. (R. 18) Plaintiff filed an application for DIB on October 25, 2002, alleging she became disabled on December 30, 2001 due to her bad back from an automobile accident, deteriorating discs, torn muscles, depression, nerves and pain. (R. 17, 56, 78, 329) Plaintiff's claims were denied initially, and again upon reconsideration. (R. 17, 329) Plaintiff testified at an administrative hearing before an ALJ on May 3, 2004. (R. 326-70) Following the hearing, the ALJ denied plaintiff's claims for DIB, finding plaintiff has the RFC for a significant range of sedentary and light work. (R. 26) The ALJ's decision became final for the purposes of judicial review under

2

42 U.S.C. § 405(g) when the Appeals Council denied plaintiff's request for review. (R. 7-10) Plaintiff then filed this action challenging the Commissioner's decision.

Plaintiff last worked on September 21, 2002 as a store clerk manager of a convenience store. (R. 78, 79) After undergoing a hysterectomy in April of 2001, (R. 120-24, 333), plaintiff alleges her pain became increasingly worse, and she was unable to perform the physical demands of her job. (R. 78, 332) Plaintiff slowly cut back the number of hours she worked until she stopped working completely due to constant pain and weakness in her back and left hip. (R. 78, 333-34)

Plaintiff received a T12 compression fracture in a motor vehicle accident in 1979. (R. 246-258) On September 17, 1992, the plaintiff was involved in another automobile accident and claimed increased back pain in the thoracic and lumbar back regions. (R. 227) In February of 2001, she was seen at Carilion Medical Associates by Steven B. Irvin, M.D., with complaints of throbbing bilateral pain in her back. (R. 194) She was diagnosed with a lumbosacral strain. (R. 194) In December of the same year, plaintiff saw William Bostic, M.D., after complaining of chronic pain in her lower back. (R. 190, 262) Dr. Bostic diagnosed her with degenerative spondylosis of the lumbosacral spine, question disc disease and facet disease. (R. 190-91, 262) A lumbosacral spine x-ray revealed a severe compression fracture at T12 with secondary acute hyperkyphosis, secondary hyperlordosis beneath that level with early disc narrowing in the lower three lumbar segments, and possible degenerative facet disease at L5-S1. (R. 189, 264) Dr. Bostic prescribed Lortab and Indocin for pain. (R. 191)

Plaintiff continued to treat with Dr. Bostic for pain in her lower back region. Dr. Bostic initially prescribed a lumbosacral support device, (R. 187, 188, 266, 267), which the plaintiff

stated was helping some with the pain. (R. 186, 268) Plaintiff cited a recurrence of neck pain, and continued to take Lortab. (R. 186, 268) Treatment notes from August 19, 2002 indicate that plaintiff found Lortab was becoming less effective; Dr. Bostic prescribed Tylox and Norflex instead. (R. 183, 269) At a return visit on September 13, 2002, Myers stated the Tylox helped more than the Lortab but did not last very long. (R. 182, 271) Dr. Bostic noted it was time to discuss long-acting pain medication with the plaintiff, as she claimed she was unable to perform much activity on a daily basis. (R. 182, 271) Dr. Bostic prescribed OxyContin, (R. 182, 271), but the plaintiff stated she did not like taking the medication because it made her depressed and seminauseous. (R. 180, 272)

A CT scan taken on October 18, 2002 revealed the old, healed compression fracture of the dorsal twelfth vertebral body was causing an increase in kyphotic curve, while the posterior aspect was mildly protruding into the anterior spinal canal, and there was mild narrowing of the L4-L5 intervertebra disc space. (R. 199-200, 296-97) No spinal stenosis of significance was noted. (R. 199-200, 296-97) Dr. Bostic discussed the option of fusing her back at that area and continued her prescription for Lortab in the place of OxyContin. (R. 177, 274) Plaintiff indicated she was not interested in surgical treatment. (R. 173, 276)

Dr. Bostic continued to treat this "chronic pain patient" in 2003. Plaintiff asked to go back on OxyContin 20 mg for her pain, and stated she was still considering the possibility of surgical treatment. (R. 166, 279) On April 14, 2003, plaintiff complained of increased discomfort in the interscapular area of the neck and upper back. (R. 162, 284) Examination revealed a normal range of motion of the cervical spine with discomfort at the extremes of both flexion and extension. (R. 162, 284) Treatment notes from May 12, 2003 state the plaintiff was

4

"getting along reasonably well with Lortabs ... and the use of OxyContin." (R. 160, 285) On July 7, 2003, plaintiff complained of increased back pain and was advised to try to lose weight. (R. 158, 287) Dr. Bostic increased her OxyContin dose to 40 mg. (R. 158, 287) Plaintiff stated this increased dosage definitely helped relieve her pain. (R. 156, 288) Myers also complained of episodic swelling in her right foot and pain in her left thumb. (R. 156, 288) She returned to Dr. Bostic a number of times to update her medication, reporting no significant change in her level of back pain. (R. 154, 159, 160, 163, 164, 170, 239, 245, 293, 295, 305, 307, 309, 311, 324)

On September 30, 2003 plaintiff complained of a bump on her right ankle, which Dr. Bostic diagnosed as a marble-sized ganglion cyst in the posterior ankle joint. (R. 153, 292) He performed an aspiration on the cyst, but the cyst recurred four weeks later. (R. 293, 295) A MRI of the right ankle showed a multiseptated cystic posterolateral ankle mass consistent with either a synovial or ganglion cyst. (R. 230) Plaintiff made plans with Dr. Liebrecht to have the cyst removed. (R. 231, 232, 244, 245, 302, 304, 309)

Plaintiff's medical records and treatment notes were reviewed by Frank M. Johnson, M.D., a state agency physician. (R. 216-24) Dr. Johnson found no significant neurological findings despite plaintiff's history of spasm and limitation of motion. (R. 224) He also found mild functional limitation, (R. 211), and concluded plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, stand or walk four hours per workday, and sit about six hours per workday. (R. 217)

At her hearing on May 3, 2004, the plaintiff testified that she is not comfortable sitting, (R. 336), and that she has trouble standing still very often. (R. 336) She said she is unable to

5

stoop, and some days is unable to bend over to tie her shoes. (R. 336) Plaintiff stated that her pain never goes away. (R. 340)

Such was the state of the medical record as of the time the ALJ rendered his decision on July 26, 2004. (R. 17-27) After the ALJ's decision but before the action of the Appeals Council on December 6, 2004, plaintiff was treated for pain management by Bradley J. Goad, D.O. (R. 316-324) Dr. Goad noted plaintiff had a normal gait and station without gross spinal, extremity, or joint abnormalities. (R. 324) He also observed her pain was well controlled with OxyContin, Norflex, and Lortab. (R. 323)

Additionally, Dr. Bostic completed a lumbar spine residual functional capacity questionnaire, in which he indicated that plaintiff can sit, stand and walk for only two hours per workday. (R. 314) Dr. Bostic also opined that plaintiff can occasionally lift ten pounds and rarely lift twenty pounds. (R. 315) Dr. Bostic remarked that Myers would likely be absent four days per month from work, and would need to take daily unscheduled breaks. (R. 314, 315)

These records were submitted to the Appeals Council following a letter dated September 24, 2005. (R. 259-61) The Notice of Appeals Council Action dated December 6, 2005 states that the Appeals Council considered this additional evidence but "found that this information does not provide a basis for changing the Administrative Law Judge's decision." (R. 5-8)

## ANALYSIS

Plaintiff contends that the Commissioner's decision should be reversed for several reasons. First, plaintiff claims that the Commissioner erred in finding the plaintiff not fully credible, and contends clear evidence in the record corroborates claimant's pain and limiting condition. (Pl.'s Br. 1) Second, plaintiff argues that the Commissioner erred when the Appeals

6

Council failed to afford Dr. Bostic's residual functional capacity evaluation substantial consideration, when it was submitted to the Appeals Council following the ALJ's decision. (Pl.'s Br. 2) Third, plaintiff contends that the hypothetical placed before the vocational expert ("VE") at the hearing was too physically demanding for plaintiff to handle considering her current physical limitations. (Pl.'s Br. 3) Finally, plaintiff claims the Commissioner erred in failing to find plaintiff disabled under Listing 1.04 of Appendix 1. (Pl.'s Br. 5).

The court is persuaded by plaintiff's second argument and believes that the objective evidence provided in the residual functional capacity evaluation completed by plaintiff's treating physician, Dr. Bostic, calls into doubt the decision grounded on prior medical reports. Because this case will be remanded to the Commissioner for consideration of Dr. Bostic's residual functional capacity evaluation, the court need not address plaintiff's other arguments.

### A. Legal Background

Courts in the Fourth Circuit are required to "review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the Secretary's findings." Wilkins, 953 F.2d at 96. While the Appeals Council is not required by its regulatory scheme to provide a detailed statement of reasons regarding late-breaking evidence,[1] its failure to

---

[1] In three separate opinions, courts in this district have concluded that the Appeals Council is not required by its regulatory scheme to provide a detailed explanation of its consideration of evidence submitted after the ALJ's decision. See Riley v. Apfel, 88 F. Supp. 2d 572, 580 (W.D. Va. 2000) ("I agree with Judge Jones, see Ridings, infra, that the regulations do not explicitly require the Appeals Council to provide written findings with respect to any new evidence and its impact in light of the overall record and that this facilitates orderly decision-making within the agency."); Ridings v. Apfel, 76 F. Supp. 2d 707, 709 (W.D. Va. 1999) ("[T]he Appeals Council is not expressly required by the regulations to state its rationale for denying review."); Smallwood v. Barnhart, No. 7:03cv00749, slip op. at 2 (W.D. Va. Oct. 19, 2004). Others disagree. See Alexander v. Apfel, 14 F. Supp. 2d 839, 843 (W.D. Va. 1998) ("The court concludes that if the Appeals Council ostensibly considers the new, "interim" evidence in

7

deal with such evidence in any fashion meaningful to the district court's substantial evidence review runs the risk of a remand to require the Commissioner to explicitly consider the additional evidence under certain circumstances. As the court noted in Riley v. Apfel, 88 F. Supp. 2d 572 (W.D. Va. 2000), "the agency leaves itself open to criticism when no explanation regarding material evidence within the record is provided." Riley, 88 F. Supp. 2d at 580. Such a remand is necessary where the additional evidence is "conflicting," or presents "material competing testimony," id.; is "contradictory," Smallwood v. Barnhart, No. 7:03cv00749, slip op. at 3-4; or "calls into doubt any decision grounded in the prior medical reports." Ridings v. Apfel, 76 F. Supp. 2d 707, 710 (W.D. Va. 1999).[2]

The task for the court is to review the ALJ's decision "in the light of evidence which the ALJ never considered, and thus never evaluated or explained." Ridings, 76 F. Supp. 2d at 709. While "this task is a difficult one," id., it is not sisyphean, because it does not require the court to weigh the evidence, but rather merely to determine whether this additional evidence creates a conflict, is contradictory, or calls into doubt any decision grounded in the prior medical reports. If so, the case must be remanded to the Commissioner to weigh and resolve the conflicting

---

denying review of a claim, it is incumbent on the Appeals Council to give some reason for finding that the "interim" evidence does not justify further administrative action."); see also Harmon v. Apfel, 103 F. Supp. 2d 869, 873 (D.S.C. 2000); Hawker v. Barnhardt, 235 F. Supp. 2d 445, 452 (D. Md. 2002); Scott v. Barnhardt, 332 F. Supp. 2d 869, 878-79 (D. Md. 2004).

[2]Such an approach also is consistent with footnote 3 in the Alexander opinion, where the court noted that a remand to consider "interim" evidence is not necessary where it is clear upon review of such "'interim' evidence that the Commissioner's underlying decision is, or is not, supported by substantial evidence." Alexander, 14 F. Supp. 2d at 844 n.3.

Case 7:05-cv-00066-mfu Document 20 Filed 12/12/05 Page 8 of 13 Pageid#: 64

evidence. If not, then the case can be decided on the existing record without the necessity of a remand.

Such an approach is consistent with the definitions of "new" and "material" evidence employed by the Fourth Circuit in Wilkins. Wilkins considers evidence to be new "if it is not duplicative or cumulative." Wilkins, 953 F.2d at 96. "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." Id. (citing Borders v. Heckler, 777 F.2d 954, 956 (4th Cir. 1985)). The reasons noted by the Ridings, Riley and Smallwood courts, and, indeed, footnote 3 of Alexander, are in accord with Wilkins' definition of "new" and "material." Duplicative or cumulative evidence will not meet the test for remand under Riley, Ridings, Smallwood, and footnote 3 of Alexander, nor will additional evidence submitted to the Appeals Council that has no reasonable possibility of changing the outcome. This approach also is consistent with the Fourth Circuit's opinion in Smith v. Chater, 99 F.3d 635, 637-38 (4th Cir. 1996), where the court noted that it is the duty of the ALJ, and not a reviewing court, to resolve conflicts in the evidence.

### B. Whether the New Evidence Necessitates a Remand

As discussed above, if the new evidence creates a conflict, is contradictory, or calls into doubt any decision grounded in the prior medical reports, the case must be remanded to the Commissioner to weigh and resolve the conflicting evidence. If not, the case can be decided on the existing record without the necessity of a remand. In making this decision, the court must decide whether plaintiff's submission to the Appeals Council is (a) new, (b) material and (c) relates to the period prior to the ALJ decision. Wilkins, 953 F. 2d at 95.

9

Case 7:05-cv-00066-mfu Document 20 Filed 12/12/05 Page 9 of 13 Pageid#: 65

Dr. Bostic's residual functional capacity evaluation was completed on October 4, 2004, after the ALJ's July 26, 2004 decision but before the Appeals Council issued its decision on December 6, 2004. Dr. Bostic is plaintiff's longstanding treating physician. In the evaluation, Dr. Bostic notes that plaintiff's pain occurs daily, and that she has been in chronic pain management program for four years. (R. 312) He indicates that plaintiff's pain is frequently severe enough to interfere with her attention and concentration, (R. 313), and that she will daily need unscheduled breaks during the workday. (R. 314) Dr. Bostic states that the plaintiff can sit, stand or walk less than two hours in a typical eight hour workday, and that she needs a job that will permit her to shift positions at will. (R. 314) Further, he notes that plaintiff can frequently lift and carry less than ten pounds, occasionally lift and carry ten pounds, and rarely lift and carry twenty pounds. (R. 315)

These findings by Dr. Bostic directly contradict the findings of the ALJ and the state agency physicians. The ALJ and state agency physicians found plaintiff has the RFC to perform work-related activities with pushing, pulling lifting and/or carrying up to twenty pounds occasionally and up to ten pounds frequently; and that plaintiff can stand or walk four hours per workday and sit six hours per workday. (R. 23, 217) The ALJ found plaintiff could not perform her past relevant work as a cashier, but he indicated she could perform a significant number of jobs at the light and sedentary levels. (R. 24-26) Because Dr. Bostic's findings as to plaintiff's RFC contradict those of the ALJ, his residual functional capacity evaluation is neither duplicative nor cumulative evidence. As such, under Wilkins, it is new.

The findings of Dr. Bostic's residual functional capacity evaluation are also material. In his decision, the ALJ found plaintiff's complaints to be less than credible. (R. 26) The ALJ also

determined plaintiff's RFC allowed her to perform a significant range of sedentary and light work, based on the recommendation of the state agency physicians. (R. 26) Relying on this determination, the ALJ posed a hypothetical question to the VE, which led her to find a significant number of jobs in the national economy that plaintiff could perform. (R. 357-60)

Indeed, plaintiff's treating physician Dr. Bostic determined her RFC to be less, finding she can only sit, stand and walk for two hours in a day. (R. 314) Dr. Bostic also stated that plaintiff needs a job that would permit her to shift positions at will. (R. 314) The VE testified at the hearing that plaintiff could not find a job in the general economy that would allow her to sit and stand at will. (R. 359) Additionally plaintiff testified her condition severely impacts her ability to perform tasks and remember. (R. 361) Dr. Bostic corroborated this testimony in his RFC evaluation by indicating plaintiff's pain is frequently severe enough to interfere with the attention and concentration needed to perform even simple work tasks. (R. 313) The VE testified that if plaintiff frequently has to be told how to perform her job, her job base would further erode. (R. 362)

This is a step five case, in which the ALJ determined plaintiff cannot perform her past relevant work but found plaintiff was not disabled because she retained the capacity for work that exists in significant numbers in the national economy. (R. 25-26) Dr. Bostic's evaluation contradicts this finding and corroborates plaintiff's testimony as to her limitations. As such, it creates a conflict and calls into doubt the ALJ's decision as to plaintiff's residual functional capacity as well as her credibility. Therefore, Dr. Bostic's evaluation is material.

Even so, however, an issue remains as to whether this evaluation should be considered, as it was not done until three months after the ALJ's decision. While, to be sure, the test postdates

the ALJ's decision, <u>Wilkins</u> does not impose a bright line test based on the date of the test akin to a statute of limitations. Rather, the issue is whether the new and material evidence "relat[es] to the period on or before the date of the ALJ decision." <u>Wilkins</u>, 953 F.2d at 95. The relation between the October 2004 evaluation and the period prior to the ALJ's decision is clear in this case, as Dr. Bostic's evaluation cites plaintiff's old compression fracture and disc degeneration as the diagnoses. (R. 312) Dr. Bostic's prior treatment records repeatedly indicate plaintiff's compression fracture and disc degeneration are the sources of plaintiff's back pain. (R. 153-191) Dr. Bostic treated the plaintiff for these maladies during the period before and up to the date of the ALJ's decision. Medical records from the date of the ALJ's decision to the date of the evaluation by Dr. Bostic reveal essentially no change in plaintiff's condition or in examination. (R. 307-311) Thus, the relation between Dr. Bostic's residual functional capacity evaluation and the period before the ALJ's decision is manifest.

Given the evaluation completed by plaintiff's longstanding treating physician and the contradictory hypothetical and RFC finding by the ALJ, it is clear that the Commissioner needs to fully evaluate this new evidence. As such, this case will be remanded to the Commissioner to weigh and resolve the conflicting evidence reflected in Dr. Bostic's residual functional capacity evaluation.

## CONCLUSION

For the reasons outlined above, in an accompanying Order entered into this day, defendant's motion for summary judgment will be denied and this case remanded to the Commissioner for consideration of this new and material evidence.

The Clerk of the Court hereby is directed to send a certified copy of this Memorandum Opinion to all counsel of record.

Enter this 12th day of December, 2005.

Michael F. Urbanski
United States Magistrate Judge

13